Adam R. Pechtel / WSBA #43743
Pechtel Law PLLC
21 N Cascade St
Kennewick, WA 99336
Telephone: (509) 586-3091

Attorney for Defendant

United States District Court
Eastern District of Washington
Before the Hon. Rosanna M. Peterson

| United States of America, | No. 4:21-CR-06028-RMP-3 |
|---|---|
| Plaintiff, | |
| v. | Motion to Suppress Evidence Obtained as a Result of an Illegal Search |
| Joel Chavez-Duran, | |
| Defendant. | Pretrial Conference<br>August 26, 2021 at 9:45 AM<br>With oral argument |

Defendant Chavez-Duran, through his attorney of record, moves the Court to suppress evidence obtained by the Government in violation of the Fourth Amendment's prohibition on unreasonable searches.

**A.    Relief Requested**

Defendant Chavez-Duran asks the Court to find that the "frisk" conducted by law enforcement personnel after the traffic stop was

Motion to Suppress - 1

made without a warrant and unreasonable. Defendant further asks the Court to exclude evidence obtained as a result of the search, namely the pills found in Defendant's pocket.

### B.    Relevant Background Facts

Beginning in May 2021, the DEA began investigating co-defendant Jose Rueles-Mendoza for drug trafficking. Complaint (ECF No. 1), *United States v. Chavez-Duran*, No. 4:21-mj-07164-MKD, at 4 (E.D. Wash July 22, 2021) ("Complaint"). Based on that investigation, DEA TFO Michael Pitts applied for and obtained a search warrant on July 14, 2021 for a black Ford Edge (WA/BUG3081). *Id.* at 5. That warrant stated:

> An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Eastern District of Washington []: A black 2012 Ford Edge bearing Washington state license plate BUG3081, Vehicle Identification Number (VIN): 2FMDK4KC5CBA71221 registered to Daniel ESPINOZA Chavez, 3829 West Kennewick Ave #1/2, Kennewick, WA (Target Vehicle 2) further described in Attachment A attached hereto and incorporated herein by this reference.
>
> I find that the affidavits or any recorded testimony establish probable cause to search and seize the person or property described above and that such search will reveal identify the person or describe the property to be seized See Attachment B attached hereto and incorporated herein by this reference.

Motion to Suppress - 2

Bates 00000010.05. Attached thereto was a document entitled "Target Vehicle 2." Presumably, this was the Attachment A referred to in the warrant. That document stated:

> Described as a black 2012 Ford Edge bearing Washington state license plate BUG3081, Vehicle Identification Number (VIN): 2FMDK4KC5CBA71221. This vehicle was utilized by an unknown subject who met with Jose MENDOZA-Ruelas, a target of this investigation The search is to include the entire vehicle. This vehicle is registered to Daniel ESPINOZA Chavez. 3829 West Kennewick Avenue, #1/2, Kennewick, WA and is commonly parked at the address 3829 West Kennewick Avenue, in the City of Kennewick, postal zip code 99336 in the County of Benton, in the State of Washington.

Bates 00000010.07.

About 11:00 AM on July 21, 2021, TFO Pitts began surveilling the residence of co-defendant Oscar Chavez-Garcia and saw the Ford Edge. *Complaint*, at 5. Surveillance continued until about 2:50 PM when an Affordable Landscaping truck parked at the residence. *Id.* at 5-6. The truck and the Ford Edge then left the residence together. *Id.* at 6. The Ford Edge stopped at a gas station where Detective Magana observed Defendant Chavez-Duran exit and reenter the Ford Edge. *Id.* at 7.

The Ford Edge joined the Affordable Landscaping truck at a construction site and the vehicles' occupants were observed

Motion to Suppress - 3

removing concrete from the driveway area. *Id.* The truck was seen leaving the construction site at about 4:20 PM. *Id.* It was later observed at the gas station at 5:00 PM. *Id.* Defendant Chavez-Duran exited the truck, entered the gas station, reentered the truck, and returned to the construction site. *Id.* at 7-8. At about 5:25 PM, Defendant Chavez-Duran drove the Ford Edge away from construction site. *Id.* at 8.

Pasco Police Officer Erickson and Kennewick Police Officer Safranek stopped the Ford Edge at about 5:30 PM. *Id.* The officers asked Defendant Chavez-Duran for his driver license, which he provided to them. *Id.* They asked him for his phone number which he provided to them. *Id.* They asked him for the phone number of the phone in the vehicle, which he didn't know. *Id.* He gave them the phone so they could find the number in the phone's settings. *Id.*

TFO Pitts approached the vehicle and informed Ddefendant Chavez-Duran that they had a warrant to seize the vehicle and search it. *Id.* at 9. TFO Pitts advised Defendant Chavez-Duran that he was not under arrest and asked if he would like to speak to TFO Pitts. *Id.* TFO Pitts noted "Based on [Defendant Chavez-Duran's] demeanor and manner of speaking, I observed [he] was nervous and

Motion to Suppress - 4

appeared to want to distance himself from the situation and/or vehicle." *Id.*

Defendant Chavez-Duran will testify that he told the officers he wanted to walk back to the construction site, but he officers refused to allow him to leave on his own. They "offered" him a "courtesy" ride back to the construction site. *Id.* at 9-10. Having no other alternative, he agreed to ride back to the construction site with the officers. *Id.* at 10. Defendant Chavez-Duran exited the Ford Edge. *Id.* at 10. Officer Safranek began patting defendant Chavez-Duran down while TFO Pitts told Chavez-Duran they needed to check him for weapons prior to transport. *See id.* TFO Pitts and Officer Safranek lacked reasonable suspicion that Chavez-Duran was armed with any weapons or dangerous.

Officer Safranek felt pills in defendant Chavez-Duran's pocket. *Id.* As Officer Safranek began telling TFO Pitts he suspected there were pills in Defendant Chavez-Duran's pocket, Defendant Chavez-Duran volunteered there were over 2,000 pills in his pocket. *Id.* Defendant Chavez-Duran was arrested and searched incident to arrest. *Id.* The officers found pills in his pocket. *Id.*

## C. Analysis

The Fourth Amendment to the Constitution of the United States provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Nevertheless, a valid search warrant does not also give police permission to search everyone present at the site of the search. *Yvarra*, 444 U.S. at 91-92. Because the scope of the search warrant for the Ford Edge did not include a search of Defendant Chavez-Duran's person, Officer Safranek's frisk was warrantless. Because it was warrantless, it was presumptively unreasonable. *Arizona v. Gant*, 556 U.S. 332, 338 (2009) ("searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment"). Exceptions to warrant requirement are "jealously and carefully drawn," *Jones v. United States*, 357 U.S. 493, 499, 78 S.Ct. 1253 (1958); they are "specifically established and well-delineated[,]" *Gant*, 556 U.S. at 338.

1  No exceptions to the warrant requirement apply to the Officer
2  Safranek's frisk of defendant Chavez-Duran.
3  First, "[a]mong the exceptions to the warrant requirement is a
4  search incident to lawful arrest." *Gant*, 556 U.S. at 338. Here,
5  however, TFO Pitt explicitly told defendant Chavez-Duran he was
6  not under arrest, Officer Safranek's then frisked defendant Chavez-
7  Duran, and TFO Pitt then arrested defendant Chavez-Duran. A
8  search occurring *before* an arrest is not incident to that arrest. The
9  search incident to arrest exception does not apply.
10  Second, when an officer "approach[es] a person for purposes of
11  investigating possibly criminal behavior[,]" the officer may make "a
12  reasonable search for weapons for the protection of the police officer,
13  where he [or she] has reason to believe that he [or she] is dealing
14  with an armed and dangerous individual[.]" *Terry v. Ohio*, 391 U.S.
15  1, 22, 27, 88 S.Ct. 1868 (1968). Factors that might suggest a person
16  is armed include: a visible bulge in the person's clothing, suggesting
17  the presence of a weapon; sudden movements; and repeated
18  attempts to reach for an object that is not visible. *United States v.*
19  *Flatter*, 456 F.3d 1154, 1157-58 (9th Cir. 2006). "A lawful frisk does
20  not always flow from a justified stop. Each element, the stop and the

frisk, must be analyzed separately; the reasonableness of each must be independently determined. The standard for justifying a frisk is whether a reasonably prudent person in the circumstances would be warranted in the belief that his or her safety or that of others was in danger." *United States v. Thomas*, 863 F.2d 622, 628 (9th Cir. 1988). Here, the officers delayed asking Defendant Chavez-Duran to exit the vehicle after stopping the vehicle. This delay suggests the officers were not particularly concerned for their own safety at that time. A finding that they suddenly were concerned for their safety minutes later is incongruent with their behavior immediately following the stop. Furthermore, all the officers knew about this vehicle's connection to drug trafficking was that an unidentified subject drove the Ford Edge at 4:55 PM on June 8, 2021 to 1010 Smith Ave, Richland, WA and appeared to hand a white plastic tube to co-defendant Mendoza. Bates 00000004.33-00000004.38. Co-defendant Mendoza then participated in a controlled buy of the white plastic tube that was later found to contain methamphetamine. *Id*. The registered owner of the vehicle was Daniel Espinoza-Chavez. Bates 00000004.36. The confidential source used in the controlled buy told officers that co-defendant

Mendoza's source of supply was the person who operates the landscaping company. Bates 00000004.38-00000004.39. Officers knew this person to be co-defendant Daniel Espinoza-Chavez. Bates 00000004.69.

When the vehicle was stopped on June 21, 2021 and the officers identified the driver to not be co-defendant Daniel Espinoza-Chavez, any inference that the driver was connected to drug trafficking was speculative. Thus, the officers could not reasonably infer Defendant Chavez-Duran was dangerous because of some connection to drug trafficking. This exception to the warrant requirement does not apply.

Third, a warrant is not required if a person voluntarily consents to the search. *Fernandez v. California*, 571 U.S. 292, 298, 134 S.Ct. 1126 (2014); *Georgia v. Randolph*, 547 U.S. 103, 106, 126 S.Ct. 1515 (2006). The Government bears the burden of proving voluntary consent. *United States v. Mendenhall*, 446 U.S. 544, 557, 100 S.Ct. 1870 (1980). It cannot fairly be said that one consents to a search voluntarily when the person has no way of avoiding the search. Such was the situation facing Defendant Chavez-Duran. He told officers he would walk back to the construction site, but they would not let

him. Instead, they require him to accept a "courtesy" ride to the construction site. According to TFO Pitts' account, in a bait-and-switch move that would make a car salesman green with envy, the officers then told Defendant Chavez-Duran they needed to search him for weapons before this "courtesy" ride. TFO Pitts states that Defendant Chavez-Duran agreed to the search. Having no alternative, defendant Chavez-Duran's consent cannot be said to have done so voluntarily.

On the other hand, defendant Chavez-Duran's account of the events differs from TFO Pitts. He will testify that Officer Safranek was already frisking him when TFO Pitts began advising Defendant Chavez-Duran that they would need to search him before the "courtesy" ride. Defendant Chavez-Duran will testify that they did not ask for his permission to pat him down and he did not agree to the pat down.

"The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search..." *Murray v. United States*, 487 U.S. 533, 536, 108 S.Ct. 2529 (1988) (*citing Weeks v. United States*, 232 U.S. 383 (1914)). Likewise, "inculpatory statements made after [controlled substances are] found" are

Motion to Suppress - 10

inadmissible if "[t]hose statement resulted directly from the unlawful search[.]" *Ruiz v. Craven*, 425 F.2d 235, 236 (9th Cir. 1970). "[E]vidence obtained in violation of the Fourth Amendment by officers acting in objectively reasonable reliance on a search warrant ... need not be excluded." *United States v. Leon*, 468 U.S. 897, 927, 104 S. Ct. 3405 (1984) (Blackmun, J., concurring). However, it cannot be said that

Here, defendant Chavez-Duran's statement about the pills in his pocket was made after Officer Safranek's unlawful search and was a direct result of that search. The pills themselves were also the direct result of Officer Safranek's unlawful search. Accordingly, the statement and the pills must both be excluded at trial.

### D.    Conclusion

The search warrant for the Ford Edge did not authorize the search of defendant Chavez-Duran's person rendering the search *per se* unreasonable. No exception to the warrant requirement applies: defendant Chavez-Duran was not arrest until after the search, a reasonably prudent person would not have believed he was armed

Motion to Suppress - 11

and dangerous, he did not consent to the search. Defendant Chavez-Duran's statement and the pills must be excluded from trial.

Dated: August 20, 2021           Respectfully Submitted,

                                 s/Adam R. Pechtel
                                 Adam R. Pechtel/ WSBA #43743
                                 Attorney for Defendant
                                 Pechtel Law PLLC
                                 21 N Cascade St
                                 Kennewick, WA 99336
                                 Telephone: (509) 586-3091
                                 Email: adam@pechtellaw.com

Motion to Suppress - 12

SERVICE CERTIFICATE

I certify that August 20, 2021, I electronically filed the foregoing with the District Court Clerk using the CM/ECF System, which will send notification of such filing to the following:

Stephanie Van Marter, Attorney for Plaintiff United States

s/Adam R. Pechtel
Adam R. Pechtel/ WSBA #43743
Attorney for Defendant
Pechtel Law PLLC
21 N Cascade St
Kennewick, WA 99336
Telephone: (509) 586-3091
Email: adam@pechtellaw.com

Motion to Suppress - 13