Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Stephanie Van Marter
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                          Plaintiff,

          v.

JOEL CHAVEZ-DURAN,

                          Defendant.

4:21-CR-06028-RMP-3

United States' Suppression
Hearing Closing Brief

Plaintiff, United States of America, by and through Vanessa R. Waldref, United

States Attorney for the Eastern District of Washington, Stephanie Van Marter,

Assistant United States Attorney for the Eastern District of Washington, hereby

submits the following Closing Brief after the motion hearing on Defendant's Motion

to Suppress Evidence.  ECF No. 51.

## I.      Introduction

On October 19, 2021 this Court presided over a hearing as to Defendant's

Motion to Suppress Evidence.  After the presentation of evidence and hearing from

several witnesses, the Court requested the parties to submit closing briefs and for the

United States to submit a reply to Defendant's closing brief.

United States' Suppression Hearing Closing Brief - 1

## II.    Discussion

A. <u>The Officers had a Reasonable and Articulable Basis to Conduct an Exterior Pat Down of Defendant for Officer Safety.</u>

As outlined in the United States' Response to Defendant's Motion to Suppress Evidence, ECF No. 62, officers are permitted to "conduct a carefully limited search of the outer clothing" to discover weapons. *Terry v. Ohio*, 392 U.S. 1, 30 (1968).  This pat down is justified where the officers "harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009).  The inquiry looks to the totality of the circumstances and requires officers to consider "all of the facts and circumstances an officer confronts in the encounter." *Thomas v. Dillard*, 818 F.3d 864, 876-77 (9th Cir. 2016).  Officers are also permitted to consider the type of crime a person is suspected of committing. *Id.* at 878.  The Ninth Circuit has held that "it is reasonable for an officer to assume a suspected narcotics trafficker is likely armed." *Id.* (citing *United States v. $109,179 in U.S. Currency*, 228 F.3d 1080, 1086 (9th Cir. 2000)).

Contrary to the Defendant's argument, the basis for the frisk is upon the totality of the circumstances, not the isolated knowledge of just one officer present.  The following facts from the hearing bear weight on this issue[1]:

---

[1] The assigned AUSA did not have access to any of the hearing transcripts at the time this argument was prepared.  The summary of facts is based upon all the exhibits and notes from the hearing.  The assigned would defer to the actual transcripts in the event of a dispute.

- Defendant was in possession and was driving a vehicle that was utilized during a drug trafficking investigation, specifically surveilled on several occasions at locations of interest and was utilized to deliver approximately one pound of methamphetamine during a controlled buy. It was unknown who the driver was at that time or who was utilizing that vehicle.

- This vehicle was frequently observed at the Affordable Landscaping property after this controlled buy and prior to the execution of search warrants. The search warrant executed at that compound revealed a number of evidentiary items to include several loaded assault style weapons.

- The vehicle was observed returning to this location after the execution of the search warrant and on the day in question. Due to the ongoing nature of the investigation, to include a missing shipment of narcotics, agents set up surveillance on the vehicle.

- The vehicle was surveilled to a job site, however, based upon the investigation thus far, the DTO had engaged in drug related activities while using Affordable Landscaping trucks and job sites in the past. As a result, a determination was made to pull the vehicle over after it left the job site at approximately 5:30 pm.

- The driver was identified as Joel Chavez Duran, a subject known to TFA Pitts. The testimony was specific as to two separate "Joel's" implicated in the investigation. As to "Joel Chavez Duran" TFA Pitts testified he was

only generally described as being involved with no specific information provided[2].

- Upon these facts, the agent's collective knowledge and information as to this overall investigation and the scope of this DTO, justified the exterior pat down search of the Defendant.

B. Defendant Voluntarily Consented to the Frisk.

"Consent searches are part of the standard investigatory techniques of law enforcement agencies" and are "constitutionally permissible and wholly legitimate aspect of effective police activity." *Fernandez v. California*, 571 U.S. 292, 298 (2014). Consent must be voluntary, and voluntariness is a question of fact to be determined from the totality of the circumstances. *Id*. at 248-49. The Ninth Circuit has identified five factors to be considered in determining whether a search was voluntary: (1) whether defendant was in custody; (2) whether arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether defendant was told he had a right not to consent; and (5) whether defendant was told a search warrant could be obtained. *United States v. Russell*, 664 F.3d 1279, 1281 (9th Cir.

---

[2] Contrary to the defendant's arguments, this understanding of the Defendant's general involvement had nothing to do with the basis of the traffic stop which was to effectuate the search warrant. This general knowledge as to his possible involvement pertains only to whether that contributed to the reasonable of conducting a pat down frisk.

United States' Suppression Hearing Closing Brief - 4

2012) (citing *United States v. Morning*, 64 F.3d 531, 533 (9th Cir. 1995) (quoting *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 1988)).

However, "consent to a search is not necessarily involuntary simply because officers failed to provide notice of the right to refuse." *United States v. Russell*, 664 F.3d 1279, 1282 (9th Cir. 2012) (citing *United States v. Cormier*, 220 F.3d 1103, 1113 (9th Cir. 2000)).  In *Russell*¸ the Ninth Circuit specifically noted the officer in question advised that *Russell* was free to leave and not under arrest but did not advise him he could refuse consent or that they could obtain a search warrant.  The Ninth Circuit still found the consent voluntary upon a totality review.

In *United States v. Vongxay*, 594 F.3d 1111, 1119-1120 (9th Cir. 2011), the Ninth Circuit, again applying the *Jones* factors set forth above, found a consent to a pat down search voluntary when *Vongxay* did not respond verbally, but instead put his hands on his head to allow the officer to search.  The Ninth Circuit affirmed the district courts findings, "Vongxay's act of raising his hands to his head constituted implied consent to search. It also found that "[t]here were no threats, coercion or otherwise." Considering the totality of the circumstances, we do not find that the district court's finding of consent was clearly erroneous."  *Id.*

Similarly, here, the pat down search of the Defendant was conducted after Defendant voluntarily consented to it both in word and in action.  The United States acknowledges there is no audio recording of interaction between the Defendant, TFA Pitts and Ofc. Safranek, the principal parties who were a witness to the advisements to

United States' Suppression Hearing Closing Brief - 5

the Defendant and his consent to the pat down search.  However, the officer's

testimony was consistent with each other and their actions reasonable under the facts

and circumstances.  Moreover, the body camera footage provides partial audio and

video which supports the officer's testimony and the voluntary nature of the consent.

There is simply no credible evidence otherwise. The evidence as to this issue

establishes the following:

- Once the vehicle in question left the job site, the officers called to assist with

    this traffic stop, pulled the vehicle over as soon as practicable.  There was no

    plan or intent to have the traffic stop on the freeway interchange.  The

    location of the traffic stop, in part dictated by the Defendant's path of travel

    which would not have been known ahead of time by the agents, was not part

    of any nefarious or coercive plan.

- The plan, as spontaneously discussed by agents on scene, was to stop the car

    based upon the search warrant and identify the driver.  TFA Pitts upon

    learning of his name, wanted to see if the Defendant would agree to speak to

    him about the investigation, to which the Defendant initially agreed.  The

    Defendant changed his mind and requested to speak to TFA Pitts at a later

    time. There was never a plan to place the Defendant into custody and the

    Defendant was advised, as he admitted, on multiple occasions that he was

    not under arrest.  *See*, Exhibit 1, Officer Safranek states the "whole ruse is

    just to get his information and that's it" (1:16; 17:27:42); SA Savage says

"we're gonna kick him loose" and "I suppose we can drive him somewhere" (3:29; 17:29:54); Ofc. Safranek says "he's not under arrest, he's free to go and be interviewed by Pasco PD." (6:40; 17:33:06) SA Savage tells Ofc. Erickson "we'll give him a courtesy ride. I'll drive his car back to your guys' shop;" TFO Pitts states that Defendant wants to "talk another time. Off-site." (8:17; 17:34:42); First mention of detaining Defendant was after pills discovered (11:05; 17:37:31). These spontaneous statements captured on video are in insight to the Court as to the intentions of the officers, all consistent with their testimony.

- After the Defendant changed his mind as to engaging in an interview, SA Pitts remined the Defendant he could not leave in the car because of the search warrant. At that time, SA Pitts offered the Defendant a courtesy ride. This occurred while the Defendant was still seated inside his car and in possession of his cell phone. SA Pitts spoke to him in Spanish at the Defendant's request although there was sufficient evidence, as admitted to by the Defendant, that he understood English. Both Ofc. Safranek and Erickson spoke to the Defendant in English and testified the Defendant responded to them appropriately and understood the English conversation.

- SA Pitts testified that, while still inside the car, if the Defendant wanted a courtesy ride, he would have to be pat down for weapons, a condition precedent to the courtesy ride. SA Pitts testified the Defendant expressly

agreed to that condition. It was then that SA Pitts asked if he had any weapons to which the Defendant stated no. Only after the Defendant agreed to the courtesy ride, did he exit the vehicle, voluntarily. After the Defendant exited the vehicle, Ofc. Safranek testified that he also advised the Defendant as to the specifics of the voluntary pat down search, as is his common practice. Ofc. Safranek's report, which was prepared directly after this traffic stop, indicated the Defendant verbally agreed to the pat down as well as provided implied consent by placing his hands on top of the car to allow the pat down search. Ofc. Safranek testified his memory was refreshed that the Defendant did provide both verbal and non-verbal consent to the pat down search. Thus, both SA Pitts and Officer Safranek testified that they each advised the Defendant the pat down was voluntary, and the Defendant consented.

- Officer Safranek and Erickson testified that people have refused courtesy rides in the past and have been able to leave the scene. All law enforcement witnesses testified had the Defendant declined the pat down search, he would have been free to leave the location however he chose.

- Defendant still had his cell phone and would have been able to make a call to arrange for another ride but instead accepted the courtesy ride.

United States' Suppression Hearing Closing Brief - 8

- The Defendant volunteered he had pills in his pocket. They were not discovered as a result of any search, but rather at the Defendant's voluntary identification.

In applying the *Jones'* factors, they weigh in favor of the voluntary pat down search: 1) whether defendant was in custody- the Defendant was advised repeatedly he was not in custody and the video affirms; (2) whether arresting officers had their guns drawn- no guns were ever drawn or pointed at the Defendant; (3) whether *Miranda* warnings were given- they were not given as the Defendant was not under arrest. Miranda warnings were given after the Defendant was placed under arrest upon the discovery of the pills. The Defendant knowingly waved those rights and agreed to be interviewed affirming the voluntary and consensual nature of the contact to that point; (4) whether defendant was told he had a right not to consent- the Defendant was not expressly advised this but was expressly advised that he could choose to do whatever he wanted. However, if he wanted a ride, he would need to agree to a pat down search; and (5) whether defendant was told a search warrant could be obtained- a search warrant had already been obtained for the vehicle to which the Defendant was explained. The pat down search was raised in the context of a courtesy ride and under these circumstances, was perfectly reasonable conduct on the part of the officers consistent with routine procedure.

The only evidence to the contrary was the testimony of the Defendant. The United States respectfully submits his testimony is neither credible nor consistent with

United States' Suppression Hearing Closing Brief - 9

the evidence before the Court. The Defendant's criminal history alone presents a picture of someone who is familiar with law enforcement practice having been the subject of repeated contacts resulting in his own arrest both in the United States and in Mexico.  The Defendant admitted to receiving a phone call from a known subject in Mexico and asked to go pick up pills for distribution, consistent with his post Miranda statement.  The Defendant agreed to meet with other members of this organization to pick up the pills and further agreed to distribute them at the direction of his contact in Mexico in exchange for money.  The Defendant admitted to having the pills on his person when he left in the vehicle in question, a vehicle he had been in possession of and using for approximately 1 year.  The Defendant acknowledged that some of the officers spoke to him in English and one officer in Spanish. The Defendant acknowledged they advised him he was not under arrest and that there was a search warrant for the car.  All consistent with the testimony of the officers.

The Defendant's testimony then changes when it comes to his voluntary consent to the courtesy ride.  Much like his sworn testimony, he is not hesitant to discuss his possession of the pills.  It seems clear he would have also volunteered that when the officers felt them in his pocket. The officers here, had no idea the Defendant had 2000 fentanyl pills in his pocket.  They were looking for the car, not the Defendant.  Their actions are consistent with that intent.  The Defendant is attempting to take advantage of a void in audio recording to fill it with self-serving testimony to try and avert what was a consensual and voluntary contact. His testimony simply does

1  not outweigh the totality of the evidence establishing that voluntary and consensual

2  nature of this contact.

3       Dated:  October 27, 2021.

4

5                                        Vanessa R. Waldref
                                         United States Attorney
6

7

8                                        Stephanie A. Van Marter
                                         Assistant United States Attorney
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 27, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the counsel of record, Adam R. Pechtel.

<div align="center" style="margin-left:40%">

*s/*
Stephanie Van Marter
Assistant United States Attorney

</div>