Adam R. Pechtel / WSBA #43743
Pechtel Law PLLC
21 N Cascade St
Kennewick, WA 99336
Telephone: (509) 586-3091

Attorney for Defendant

United States District Court
Eastern District of Washington
Before the Hon. Rosanna M. Peterson

| United States of America, | |
|---|---|
| Plaintiff, | No. 4:21-CR-06028-RMP-3 |
| v. | Defendant Chavez-Duran's Suppress Hearing Closing Brief |
| Joel Chavez-Duran, | |
| Defendant. | |

Defendant Chavez-Duran, by and through his attorney of record, submits the following closing argument in support of his motion to suppress. ECF No. 51.

**A.    Introduction**

"[A] limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps

Defendant's Closing Brief - 1

humiliating experience." *Terry v. Ohio*, 392 U.S. 1, 24–25, 88 S. Ct. 1868, 1881–82 (1968). Following a traffic stop to seize a vehicle pursuant to a warrant, Officer Safranek conducted a pat down search of the vehicle's driver, Defendant Chavez-Duran. The pat down search revealed 2,000 pills in Defendant Chavez-Duran's pocket. Defendant Chavez-Duran moved to suppress the pills because the pat down search violated his Fourth Amendment right to be free against unreasonable searches. In response, the Government has offered two justifications for the reasonableness of the search: it was justified by officer safety and/or Defendant Chavez-Duran consented to the search. However, neither justification applies in this case.

**B.   The officers did not reasonably believe Defendant was armed and dangerous**

An officer may conduct "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual[.]" *Terry*, 392 U.S. at 27. His reason must be based on "specific reasonable inferences" taken "from the facts in light of his experience." *Id*. And

Defendant's Closing Brief - 2

this belief would only reasonable when a "reasonably prudent man" would reach the same conclusion. *Id.*

What, then, are the "specific reasonable inferences" that can be drawn from the facts in this case?

Multiple officers testified they did not believe Defendant Chavez-Duran was armed and dangerous. When asked to identify any specific facts that suggested he was armed and dangerous, the witnesses could not. The Government's argument completely ignores the "specific reasonable inferences" that these officers made from the facts based on their own training and experience.

The Government attempts to supplant these officers' "specific reasonable inferences" that Defendant was not armed and dangerous with her own inferences based on circumstantial evidence. ECF No. 78 at 2-4.

Even if the Court were to ignore the officers' explicit testimony that they did not believe Defendant was armed and dangerous, the circumstantial evidence is insufficient for a "reasonably prudent man" to conclude "his safety or that of others was in danger." *Terry*, 392 U.S. at 27. In the Government's own word, only Agent Pitts (not Officer Safranek) was aware that Defendant was "generally

Defendant's Closing Brief - 3

described as being involved with no specific information provided." ECF No. 78 at 3-4. The only other information available to the officers was that Defendant was driving a vehicle that had been previously observed during the investigation. These "facts" are about as non "specific and articulable" as one can get. They simply are insufficient for a "reasonably prudent man" to conclude Defendant was armed and dangerous.

**C.    Defendant Chavez-Duran did not consent to the search**

Consent that is "given 'freely and voluntarily'" "is a recognized exception to the Fourth Amendment's protection against unreasonable searches and seizures." *United States v. Russell*, 664 F.3d 1279, 1281 (9th Cir. 2012). This Court should consider five factors when determining the voluntariness of the consent:

> (1) whether defendant was in custody; (2) whether the arresting officers have their guns drawn; (3) whether Miranda warnings have been given; (4) whether the defendant was told he has a right not to consent; and (5) whether defendant was told a search warrant could be obtained. The fact that some of these factors are not established does not automatically mean that consent was not voluntary.

*Id.* "[A]lthough … these factors … aid in the decisionmaking process, the full richness of any encounter must be considered by the district

Defendant's Closing Brief - 4

court." *United States v. Morning*, 64 F.3d 531, 533 (9th Cir. 1995), *abrogated on other grounds by Georgia v. Randolph*, 547 U.S. 103, 126 S. Ct. 1515 (2006).

The Court should first note it is incredible to believe a person with 2,000 illicit pills in their pocket would voluntarily submit themselves to a pat down search by police officers when he felt "free to leave." Although Defendant was not under formal arrest, the traffic stop was a seizure from which Defendant was not free to leave. RCW 46.61.022; RCW 46.61.024; *Arizona v. Johnson*, 555 U.S. 323, 129 S. Ct. 781 (2009). This factor weighs against voluntariness.

Although the officers guns were not drawn, the police presence was significant. Six officers responded to the traffic stop, three in uniforms, three in plain clothes. Agent Pitts wore a tactical ballistic vest labeled police and testified that he pulled his shirt up so that he could freely draw his side arm if needed. When confronted by six armed officers who made a show of authority by stating they had a search warrant for the vehicle, Defendant's ability to refuse consent to the search was impacted. This factor weighs against voluntariness.

Defendant's Closing Brief - 5

No Miranda warnings were given, so the third factor weights in favor of voluntariness.

The officers testified they did not advise Defendant of his right to refuse consent. This factor weighs against voluntariness.

Lastly, Agent Pitts told Defendant they had a warrant and were taking the vehicle. This occurred minutes before the pat down search. Agent Pitts did not clarify the scope the warrant to tell Defendant he was free to leave, free to refuse the courtesy ride, or free to refuse pat down search. This factor also weighs against voluntariness.

Defendant Chavez-Duran's testimony was credible. The Court had the opportunity to observe his demeanor. He testified that he told Agent Pitts that he wanted to walk away from the traffic stop, but Agent Pitts refused to let him walk away. It was only after his alternative options were extinguished that he agreed to the "courtesy" ride. He further testified that he can communicate some in English, but he has poor comprehension. His primary language is Spanish.

Agent Pitts swore under oath that Defendant "<u>ultimately</u> asked," *see also* ECF No. 1 at 9-10, for the courtesy ride. This suggests

Defendant's Closing Brief - 6

Defendant was initially reluctant to accept the courtesy ride. Agent Pitts testified that he told Defendant in Spanish that he would need to check Defendant for weapons before the courtesy ride and Defendant agreed, but Agent Pitts did not then search him. Agent Pitts did not testify that he communicated Defendant's consent to Officer Safranek.

Officer Erickson testified that as the officer providing the courtesy transport, he was the officer who should have conducted the search. He testified that even though Officer Safranek conducted a search, he would have searched Defendant again before letting Defendant inside his vehicle.

Officer Safranek testified that he told (not asked) Defendant he was going to search him for weapons. He testified that Defendant then said "Yes." A response of "yes" to a statement (not a question) demonstrates Defendant's lack of ability to communicate in English.

The officers' testimony shows they were none of them were on the same page. Exhibit 1 shows Officer Safranek approaching Officer Erickson about the courtesy ride. It was Officer Erickson who first mentioned the search. Following that conversation, Officer Erickson walked away to prepare for the search (getting gloves). Meanwhile,

Defendant's Closing Brief - 7

1 Officer Safranek walked back to the vehicle to conduct the search.
2 Meanwhile, Agent Pitts was supposedly telling Defendant they would
3 need to check him for weapons before the courtesy ride.

4 Agent Pitts swore under oath that Defendant was "nervous." ECF
5 No. 1 at 9. But all three officers, including Agent Pitts, testified
6 during the hearing that Defendant was calm and not nervous.

7 It should be noted that counsel is not accusing these officers of
8 perjury. Rather, counsel believes the Court will recognize that the
9 officers' testimony is based on their memories that were
10 subsequently and unconsciously molded to conform to their training
11 and experience. And for Agent Pitts, also to conform to the testimony
12 of the other witnesses which he observed during the hearing.

13 Simply put, it is not credible to believe Defendant <u>voluntarily</u>
14 allowed officers to search him when he was aware he had 2,000 pills
15 in his pocket.

16 //
17 //
18 //
19
20

Defendant's Closing Brief - 8

**D.   Conclusion**

For the foregoing reasons, Defendant respectfully asks the Court to grant his motion to suppress.

Dated: October 30, 2021          Respectfully Submitted,

s/Adam R. Pechtel
Adam R. Pechtel/ WSBA #43743
Attorney for Defendant
Pechtel Law PLLC
21 N Cascade St
Kennewick, WA 99336
Telephone: (509) 586-3091
Email: adam@pechtellaw.com

SERVICE CERTIFICATE

I certify that October 30, 2021, I electronically filed the foregoing with the District Court Clerk using the CM/ECF System, which will send notification of such filing to the following:

Stephanie Van Marter, Attorney for Plaintiff United States

                                        s/Adam R. Pechtel
                                        Adam R. Pechtel/ WSBA #43743
                                        Attorney for Defendant
                                        Pechtel Law PLLC
                                        21 N Cascade St
                                        Kennewick, WA 99336
                                        Telephone: (509) 586-3091
                                        Email: adam@pechtellaw.com