FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 23, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOEL CHAVEZ-DURAN (3),<br><br>Defendant. | NO: 4:21-CR-6028-RMP-3<br><br>ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS |

BEFORE THE COURT is Defendant Joel Chavez-Duran's Motion to Suppress, ECF No. 51. The Court heard oral argument on the motion on October 19, 2021. Defendants Jose Mendoza-Ruelas, Oscar Chavez-Garcia, and Joel Chavez-Duran, who are in custody of the U.S. Marshal, were present and represented by Assistant Federal Defenders Alex B. Hernandez and Nick Mirr, attorney Roger J. Peven, and Criminal Justice Act attorney Adam R. Pechtel, respectively. Defendants Mendoza-Ruelas and Chavez-Duran were assisted by court-certified interpreters Natalia Rivera and Kenneth Barger. Assistant United States Attorney Stephanie A. Van Marter appeared on behalf of the Government.

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS ~ 1

The Court heard testimony from Kennewick Police Officer Kris Safranek, Pasco Police Officer Kevin Erickson, U.S. Border Patrol and Drug Enforcement Association ("DEA") Task Force Agent Michael Pitts, and Defendant. The Court admitted exhibits and heard arguments from counsel. Having reviewed the parties' filings, heard the argument and testimony presented at the suppression hearing, reviewed the parties' written closing remarks, and reviewed the relevant law, the Court is fully informed.

## BACKGROUND

Defendant Joel Chavez-Duran was arrested on a criminal complaint on July 22, 2021. *See* ECF Nos. 1–2, 7. The Government filed a Superseding Indictment on August 3, 2021, charging Mr. Chavez-Duran, along with co-defendants Jose Mendoza-Ruelas and Oscar Chavez-Garcia, with one count of conspiracy to distribute 50 grams or more of actual (pure) methamphetamine and 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi) and (viii), 846. ECF No. 23. The Government also charged Mr. Chavez-Duran with one count of possession with intent to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi). *Id.*

The investigation preceding Defendant Chavez-Duran's arrest involved a multi-year investigation into a drug trafficking organization ("DTO") and three controlled drug buys from Mr. Mendoza-Ruelas, a co-defendant in this matter. DEA agents believed that Mr. Mendoza-Ruelas was associated with a DTO that

was using a business called "Affordable Landscaping" as a front for its drug trafficking activities. ECF No. 67 at 3–4, 24. In November 2019, DEA agents observed an individual retrieve a bag containing two kilograms of cocaine from a white truck with the words "Affordable Landscaping on the side." *Id*. at 13. Over a year later, a confidential informant voluntarily revealed that Co-Defendant Oscar Chavez works for Affordable Landscaping and is allegedly involved in a DTO. *Id.* at 15–16.

In May 2021, after receiving information from a different confidential source ("CS"), the DEA began investigating Jose Mendoza-Ruelas for his alleged involvement in a DTO operating in the Tri-Cities area of Washington State. ECF No. 67 at 17. Between May and June, the DEA arranged three controlled drug buys with Mr. Mendoza-Ruelas and the CS, resulting in the total purchase of two pounds of methamphetamine and 1,250 pills laced with fentanyl. *Id.* at 20–24, 32–39, 44–52.

During the first drug buy, Mr. Mendoza-Ruelas allegedly informed the CS that the main boss of the DTO owns a landscaping business that operates as a cover for the drug business. *Id.* at 24. At the second drug buy, officers observed Mr. Mendoza-Ruelas approach the passenger door of a black Ford Edge vehicle (WA license plate #BUG3081).[1] *Id.* at 35. Mr. Mendoza-Ruelas leaned into the

---

[1] The Washington Department of Licensing lists the vehicle as a 2012 black Ford Edge, registered to Daniel Espinoza-Chavez. ECF No. 67 at 36.

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS ~ 3

vehicle and emerged with "what appeared to be a white plastic tube-shaped package." *Id.* Mr. Mendoza-Ruelas handed the same tube-shaped package, which was later confirmed to contain methamphetamine, to the CS. *Id.* at 37–38. After the third drug buy, the CS negotiated with Mr. Mendoza-Ruelas to make a bigger drug purchase in about two weeks. *Id.* at 51.

Over the course of their surveillance, DEA agents observed that the DTO utilized several residences and vehicles, including the 2012 black Ford Edge. Agents recognized one of the residence locations as "an area associated with Affordable Landscaping" and "observed multiple Affordable Landscaping work vehicles as well as vehicles registered to subjects of investigation parked there." *Id.* at 25.

DEA agents obtained several search warrants for the residences, vehicles, and landscaping business identified during their investigation. *See id.* at 79–92. The officers executed the search warrants on July 16, 2021, based on the CS's negotiations with Mr. Mendoza-Ruelas to purchase over thirty pounds of methamphetamine and five thousand fentanyl-laced pills that same day. ECF No. 67-1 at 65.

While executing the search warrants, DEA agents arrested Mr. Mendoza-Ruelas without incident. *Id.* at 67. They also seized over $160,000 in U.S. currency, multiple AK style rifles, packaging materials, and scales at the residences linked with the Affordable Landscaping business. *Id.* at 68–69.

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS ~ 4

1  However, the agents did not find the large drug shipment for the pre-arranged deal
2  with the CS. *Id.* at 70–71. Nor did they locate and execute the search warrant on
3  the 2012 black Ford Edge. ECF No. 67-2 at 2.
4        On July 21, 2021, at around 11:00 a.m., Agent Michael Pitts returned to the
5  location associated with Affordable Landscaping. ECF No. 67-1 at 78. While
6  there, he observed the same 2012 black Ford Edge for which he previously had
7  obtained a search warrant. *Id.* Around 2:50 p.m., surveillance observed the Ford
8  Edge depart in tandem with an "Affordable Landscaping" work truck. *Id.* at 79.
9  Agent Pitts followed both vehicles until the Ford Edge stopped at a Conoco Gas
10 Station in Pasco, Washington, while the truck continued onwards. *Id.* at 79–80. At
11 the gas station, Agent Pitts observed a Hispanic male wearing a "Sox" hat, later
12 identified as Joel Chavez-Duran, exit and re-enter the Ford Edge. *Id.* Surveillance
13 continued monitoring both vehicles until the Ford Edge departed a suspected job
14 site around 5:25 p.m. *Id.* at 80–81. Agent Pitts did not know who was driving the
15 Ford Edge, but surveillance followed the car anyway. *Id.* at 81.
16       At approximately 5:30 p.m., at Agent Pitts's request, Pasco Police Officer
17 Kevin Erickson and Kennewick Police Officer Kris Safranek stopped the Ford
18 Edge to execute the search warrant for the vehicle. *Id.* Officer Erickson, who was
19 wearing a body camera, approached the driver and sole occupant of the vehicle,
20 who identified himself as Joel Chavez-Duran and provided his valid Washington
21 driver's license. *Id.* Officer Safranek asked for Mr. Chavez-Duran's phone

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS ~ 5

number, which he provided. *Id.*² Officer Safranek noticed a black phone sitting in the center console and asked Defendant if the phone number he provided was for that phone; Defendant responded "no." *Id.* at 81–82. Officer Safranek asked for the phone number of the phone in Defendant's possession, but Defendant said he did not know the number. *Id.* at 81–82. Officer Safranek asked if he could show Defendant how to find the phone number in the phone's settings and Defendant gave him the phone. *Id.* at 82. Under the phone's settings, Officer Safranek accessed the phone number and then gave the phone back to Defendant. *Id.* The communications between Defendant and both officers were spoken in English.

Following this exchange, Agent Pitts arrived on the scene, identified himself to Defendant, and informed Defendant that he would be seizing the vehicle pursuant to a search warrant. *Id.* Early in the conversation, Agent Pitts asked Defendant which language he was most comfortable speaking in and the two began to converse in Spanish. Agent Pitts told Defendant that he was not under arrest and asked if Defendant wanted to voluntarily talk to him at the Pasco Police Department. *Id.* Defendant initially agreed to talk but changed his mind and asked

---

² Unlike Officer Erickson, Officer Safranek was not wearing a body camera. The Government notes that "[a]t the time of this traffic stop, the Kennewick Police Department had not outfitted its patrollers with body cameras. Pasco Police Department however, had." ECF No. 62 at 6 n.3. Defendant does not argue or suggest that the officers violated the relevant policies of either police department based on the body camera footage that was captured during the traffic stop.

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS ~ 6

1  if he could meet with Agent Pitts later. *Id.* At this point, Agent Pitts observed that
2  Defendant appeared nervous. *Id.*³ Agent Pitts informed Defendant that the Ford
3  Edge would be seized and asked if Defendant wanted a courtesy ride. *Id.* at 83.
4  Defendant asked if he could get a ride back to where he was working, and Agent
5  Pitts alleges that he informed Defendant that he would need to be checked for
6  weapons first. *Id.* According to Agent Pitts, Defendant stated that he did not have
7  any weapons on him and consented to being searched. *Id.*

8      Defendant disputes the above facts. He states that he asked if he could walk
9  back to the construction site, but "officers refused to allow him to leave on his
10 own," offering him a "courtesy" ride instead. ECF No. 51 at 5. Defendant felt that
11 he had "no other alternative" so he agreed to ride back to the construction site with
12 the officers. *Id.* When he exited the Ford Edge, Officer Safranek began patting
13 him down while Agent Pitts allegedly told Defendant that "they needed to check
14 him for weapons prior to transport." *Id.*

15     During the pat down, Officer Safranek removed a folded knife in
16 Defendant's front pocket. ECF No. 67-1 at 83. As he continued the pat down,
17 Officer Safranek felt items in Defendant's left pants cargo pocket, which Officer
18 Safranek believed to be a large amount of pills. *Id.* Officer Safranek informed

---

20 ³ At the hearing, both Officers Safranek and Erickson, along with Agent Pitts,
21 described Defendant as calm. Agent Pitts clarified that Defendant mostly seemed
nervous about when and how the interview would occur.

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS ~ 7

1  Agent Pitts of his suspicion, during which point Defendant stated that there were
2  2,000 pills in his cargo pocket. *Id.* Officers then placed Defendant into custody
3  and performed a search incident to arrest, which revealed four plastic bags of pills
4  suspected to contain fentanyl in Defendant's cargo pocket. *Id.* Agent Pitts
5  informed Defendant that he was under arrest and Officer Safranek transported
6  Defendant to the Pasco Police Department. *Id.* at 84.

    Defendant moves to suppress the evidence obtained during the search,
8  alleging that the search and seizure were unlawful.

## LEGAL STANDARD

10  The Fourth Amendment protects people against unreasonable searches and
11  seizures. *Katz v. United States*, 389 U.S. 347, 353, 88 S. Ct. 507, 19 L. Ed. 2d 576
12  (1967). It is settled law that "a traffic stop entails a seizure of the driver 'even
13  though the purpose of the stop is limited and the resulting detention quite brief.'"
14  *Brendlin v. California*, 551 U.S. 249, 255, 127 S. Ct. 2400, 168 L. Ed. 2d 132
15  (2007) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed.
16  2d 660 (1979)). Relatedly, a police officer's pat down of the outer surfaces of an
17  individual's clothing constitutes a "search." *Terry v. Ohio*, 392 U.S. 1, 19,
18  88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

    Warrantless searches "are per se unreasonable under the Fourth
20  Amendment—subject only to a few specifically established and well-delineated
21  exceptions." *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS ~ 8

485 (2009) (quoting *Katz*, 389 U.S. at 357).  The Government bears the burden of proving "that a warrantless search or seizure falls within an exception to the warrant requirement."  *United States v. Scott*, 705 F.3d 410, 416–17 (9th Cir. 2012) (citing *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001)).

## DISCUSSION

Defendant seeks to suppress the 2,000 fentanyl-laced pills located in his pocket following the pat down conducted by Officer Safranek.  ECF No. 51 at 1–2.  While DEA agents obtained a search warrant for the 2012 Ford Edge vehicle, neither party suggests a warrant was obtained for Defendant.  Thus, Defendant argues that the warrantless search of his person is presumptively unreasonable and that no exceptions to the warrant requirement apply.  *Id.* at 6–7.  In response, the Government asserts that several exceptions to the warrant requirement apply in this case, including that Defendant expressly consented to the search after requesting a courtesy ride from officers.  ECF Nos. 62 at 15–16, 78 at 5–6.  The Government also argues that the pat down was a justified *Terry* frisk based on the totality of the circumstances, including Defendant's consent to the courtesy ride.  ECF Nos. 62 at 13–15, 78 at 2–4.  Given that the pat down search was preceded by Defendant's alleged acceptance of a courtesy ride and consent to be searched, the Court first examines the voluntariness of Defendant's consent.

/ / /

/ / /

Consent

One of the "specifically established exceptions" to the general warrant and probable cause requirements "is a search that is conducted pursuant to consent." *Schneckloth*, 412 U.S. at 219. Consent searches "are 'a constitutionally permissible and wholly legitimate aspect of effective police activity.'" *Fernandez v. California*, 571 U.S. 292, 298, 134 S. Ct. 1126, 188 L. Ed. 2d 25 (2014) (quoting *Schneckloth*, 412 U.S. at 228). Consent to search must be voluntary, "and not the result of duress or coercion, express or implied." *Schneckloth*, 412 U.S. at 248.

Voluntariness is determined from the totality of the circumstances and the prosecution need not demonstrate the subject's "knowledge of a right to refuse" as a prerequisite to voluntary consent. *Id.* at 248–49. The Ninth Circuit has identified five factors to help determine whether consent to search is voluntary:

> (1) whether defendant was in custody; (2) whether the arresting officers have their guns drawn; (3) whether Miranda warnings have been given; (4) whether the defendant was told he has a right not to consent; and (5) whether defendant was told a search warrant could be obtained. The fact that some of these factors are not established does not automatically mean that consent was not voluntary.

*United States v. Russell*, 664 F.3d 1279, 1281 (9th Cir. 2012) (citing *United States v. Morning*, 64 F.3d 531, 533 (9th Cir. 1995)). The Government bears the burden of proving voluntary consent. *United States v. Mendenhall*, 446 U.S. 554, 557, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980).

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS ~ 10

In *United States v. Carillo*, 902 F.2d 1405, 1407 (9th Cir. 1990), officers discovered the defendant in the middle of the night, approximately one-half mile away from the city limits of Casa Grande, Arizona. The defendant asked for some water and a ride to Casa Grande, and, after the officers identified themselves, the defendant consented to riding with the officers to search for his car and was subsequently arrested. *Id.* at 1408. The Ninth Circuit determined that the defendant voluntarily consented to the ride because the officers did not "draw their weapons," or physically threaten or harass the defendant but, instead, offered their assistance in locating the defendant's car, which the defendant "willingly accepted." *Id.* at 1411.

In this case, Agent Pitts claims that he offered to give Defendant a courtesy ride to a construction work site pending Defendant's consent to a pat down for weapons, which Defendant voluntarily provided. ECF No. 67 at 83. Agent Pitts testified that this conversation occurred prior to Defendant's exiting the vehicle. In contrast, Defendant argues that he wanted to walk to the construction site but was told he could not leave on his own. ECF No. 51 at 5. Defendant asserts that he felt that the only alternative available to him was to accept the courtesy ride. Moreover, Defendant claims that Officer Safranek began frisking him immediately after Defendant exited the vehicle, at which point Agent Pitts informed Defendant that the instant search was required before receiving the courtesy ride. *Id.* at 10.

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS ~ 11

The Government responds that, among other factors, (1) officers did not draw their weapons on Defendant; (2) only one uniformed officer approached the Defendant at a time; (3) officers allowed Defendant to remain in the vehicle during their preliminary exchange with him; (4) the stop occurred during daylight hours on a public highway; and (5) Defendant retained possession of the phone in the center console of the car, "which he could have used to call for help from someone other than the officers." ECF No. 62 at 17–20. Similar to the defendant in *Carillo*, the Government argues that Mr. Chavez-Duran voluntarily consented to join the officers for the courtesy ride. *Id.* at 20.

In considering the applicable *Russell* factors, the Court finds that Defendant voluntarily consented to the search. First, Defendant acknowledged that he was repeatedly told that he was not under arrest. Second, in reviewing the video footage of the vehicle stop and subsequent search, as well as relevant witness testimony, no officers drew their guns on Defendant. Third, neither Agent Pitts nor Officer Safranek advised Defendant of his *Miranda*[4] rights because he was not under arrest prior to or during the pat down search.

As to the fourth *Russell* factor, it appears that neither Agent Pitts nor Officer Safranek told Defendant that he had the right to refuse the pat down search. However, knowledge of the "right to refuse" is not a prerequisite to consent.

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1968).

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS ~ 12

*Schneckloth*, 412 U.S. at 248–49. Fifth, and finally, no one told Defendant that a search warrant could be obtained because the scope of the pat down search was limited to a weapons frisk for officer safety prior to giving Defendant a courtesy ride.

Relatedly, the Court finds that Defendant's testimony lacked credibility and often included evasive or incomplete answers about his extensive prior criminal history and past experiences with law enforcement. In closing argument, counsel for Defendant argues that "it is incredible to believe a person with 2,000 illicit pills in their pocket would voluntarily submit themselves to a pat down search when he felt 'free to leave.'" ECF No. 79 at 5. Yet, Defendant's motivation to consent to the search remains unclear. Once Officer Safranek began the pat down and discovered the knife, Defendant did not revoke his consent but rather allowed the search to continue. Prior to the pat down, Defendant admitted that he agreed to an interview with Agent Pitts, although Defendant changed his mind about when the interview would occur. Defendant demonstrated that he felt free to decline an immediate interview, which would infer that he presumably also felt free to withdraw his consent to the pat down and the courtesy ride.

<u>Terry Stop</u>

Separately, the Government argues that "Defendant's behavior and the totality of the circumstances would lead to reasonable suspicion that he may be armed and dangerous, justifying a *Terry* frisk for weapons." ECF No. 62 at 13. As

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS ~ 13

this Court already found that the warrantless search was justified based on Defendant's consent, the Court need not examine whether the voluntary pat down also constituted a valid *Terry* frisk.

## CONCLUSION

In sum, the Court finds that Agent Pitts credibly testified that Defendant consented to a pat down search in order to receive a courtesy ride. Defendant's testimony, on the other hand, was inconsistent and lacked credibility. Moreover, a totality of the circumstances demonstrates that Defendant's consent was voluntarily given.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress, **ECF No. 51**, is **DENIED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** November 23, 2021.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge